**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**RANDALL RAY BUTLER,**

      **Plaintiff,**

**v.**                                                        **Civil Action No. 2:09cv110**
                                                                 **(Judge Bailey)**

**K. WEEKLY, TERRY MILLER**
**AND DR. JERRY HAHN,**

      **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this civil rights action against defendants Weekly and Miller on September 9, 2009. On October 1, 2009, the undersigned conducted a preliminary review of the file and directed those defendants to answer the complaint.

On October 19, 2009, the plaintiff filed a motion to amend his complaint to add Dr. Hahn as a defendant. Because no answer had yet been served, the Court granted the plaintiff's motion as a matter of course and directed the Clerk to add Dr. Hahn as a defendant in this action. In addition, the Court directed that Dr. Hahn be served with a summons and a copy of the complaint.

On November 2, 2009, defendant Weekly filed a Motion to Dismiss and for Summary Judgment. Because the plaintiff is proceeding *pro se*, the Court issued a Roseboro Notice the next day.

On November 4, 2009, defendant Miller filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. The Court issued a second Roseboro Notice on November 5, 2009.

On November 6, 2009, the plaintiff filed his response to defendant Weekly's motion to

dismiss and for summary judgment.

On November 12, 2009, Dr. Hahn filed a Motion to Dismiss Amended Complaint and Motion for Summary Judgment. A third Roseboro Notice was issued on November 13, 2009. Also on November 13, 2009, the Court received from the plaintiff various documents in support of his complaint and his response to defendant Miller's motion to dismiss and for summary judgment.

On November 20, 2009, the plaintiff filed his response to Dr. Hahn's motion to dismiss and for summary judgment. This case is before the undersigned for a report and recommendation on the defendants' pending motions.

## II. Contentions of the Parties

### A. The Complaint

In the complaint, the plaintiff alleges that upon his entry into the Regional Jail system, he advised medical staff of his chronic back problems. The plaintiff asserts that medical staff has since failed to provide him with the proper pain medication and that he suffers from constant and debilitating pain. The plaintiff asserts that due to the failure of the defendants to properly treat his back problems, he is unable to exercise and has gained 40 pounds, he cannot sit or walk for more than five or ten minutes at a time, and that he cannot lie down without pain. The plaintiff asserts that he has exhausted his administrative remedies with regard to his claim, but that he has received no relief through that process. As a result of the defendants alleged violations of his constitutional rights, the plaintiff seeks monetary damages in the amount of $300,000.

### B. Defendant Weekly's Motion

In her motion to dismiss and for summary judgment, defendant Weekly asserts that she is a licensed practical nurse and is currently employed by the Tygart Valley Regional Jail as the Health

Services Administrator. Defendant Weekly asserts that the plaintiff's complaint against her should be dismissed because:

(1) the plaintiff has failed to sufficiently plead a viable Eighth Amendment claim;

(2) she is entitled to qualified immunity; and

(3) there are no genuine issues of material fact in dispute with respect to the plaintiff's claim that she was deliberately indifferent to his serious medical needs.

**C.  The Plaintiff's Response to Defendant Weekly's Motion**

In his response to defendant Weekly's motion, the plaintiff asserts that the documents attached to his complaint show a failure to act by defendant Weekly that is sufficient to establish a violation of his constitutional rights. In addition, the plaintiff argues that in her capacity as the Health Services Administrator, defendant Weekly has a responsibility to oversee the health care being delivered to the inmates. He further asserts that defendant Weekly failed to address his numerous complaints, even though she had access to all of his prior medical records and treatment plans. The plaintiff asserts that defendant Weekly failed to examine these documents to discover the magnitude of his back troubles. However, the plaintiff concedes that defendant Weekly, as a licensed practical nurse, was not able to prescribe him the pain medication he sought. Instead, he asserts that she was deliberately indifferent to his serious medical needs by not seeking a second opinion on his behalf. The plaintiff asserts that defendant Weekly was therefore, "incompetent in the performance of [her] duties."

**D.  Defendant Miller's Motion to Dismiss and for Summary Judgment**

In his motion, defendant Miller asserts that the complaint should be dismissed, or judgment granted in his favor, for the following reasons:

3

(1) qualified good faith immunity shields him from liability in his individual capacity;

(2) the plaintiff's claim against him is barred by the Eleventh Amendment and the Will doctrine; and

(3) the plaintiff has failed to state a cognizable Eighth Amendment claim.

**E.     The Plaintiff's Response to Defendant Miller's Motion**

In his response to defendant Miller's motion, the plaintiff asserts that the documents attached to his complaint establish that defendant Miller failed to act on his behalf and was deliberately indifferent to his serious medical needs. The plaintiff concedes that defendant Miller does not directly handle medical issues. However, the plaintiff argues that as the Executive Director of the Regional Jail System, defendant Miller is responsible for all aspects of that system. Moreover, the plaintiff notes that defendant Miller is the last chance for help on the administrative remedy chain of command. The plaintiff then asserts that defendant Miller's failure to respond to his administrative pleas establishes his liability in this action. The plaintiff asserts that defendant Miller could have stopped the violations of his constitutional rights and is liable for his failure to do so.

**F.     Defendant Hahn's Motion to Dismiss or for Summary Judgment**

In his motion, Dr. Hahn asserts that he is a licensed medical doctor contracted with Prime Care Medical of West Virginia, Inc., to provide medical care and treatment for inmates in various regional jails in the state of West Virginia. Dr. Hahn further asserts that he is assisted in providing such care by Heather Grove, a certified physician's assistant. Dr. Hahn asserts that he has seen the plaintiff for evaluation and treatment of various medical issues, including his complaints of chronic back pain. However, Dr. Hahn asserts that the plaintiff's complaint against him should be dismissed because:

(1) the plaintiff has failed to sufficiently plead a viable Eighth Amendment claim;

(2) he is entitled to qualified immunity; and

(3) there are no genuine issues of material fact in dispute with respect to the plaintiff's claim that he was deliberately indifferent to the plaintiff's serious medical needs.

### G. The Plaintiff's Response to Dr. Hahn's Motion

In his response to Dr. Hahn's motion, the plaintiff asserts that Dr. Hahn clearly violated his rights by failing to address the plaintiff's pleas for a different treatment plan. In addition, the plaintiff asserts that Dr. Hahn violated his constitutional rights by failing to follow the pre-established treatment plan of other doctors. The plaintiff asserts that Dr. Hahn's reasons for stopping his prescription of Ultram are merely pretense and contradict the information the plaintiff received from other physicians. The plaintiff further asserts that he never told Dr. Hahn that he had a history of taking Percocet and Oxycontin and that Dr. Hahn would have discovered this had he read the plaintiff's prior medical history. The plaintiff asserts that Dr. Hahn provided him grossly incompetent treatment and clearly understood that what he was doing would violate the plaintiff's constitutional rights.

### H. The Plaintiff's Supporting (Supplemental) Documents

In his supporting documents, the plaintiff asks the Court to review certain medical records that he alleges show that the defendants were deliberately indifferent to his serious medical needs. In addition, the plaintiff makes certain statements and provides additional information in support of his claims. The Court has filed the plaintiff's documents and will consider them in making any decisions in this case.

### III. Standard of Review

A.  **Motion to Dismiss**

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc. v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, the Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. Id. In other words, the complaint must contain allegations that are "plausible" on their face, rather than merely "conceivable." Id. at 555, 570. A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

B.  **Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid

weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

### IV.   Analysis

**A.   Defendants Weekly and Miller**

Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001) (internal citation omitted). Therefore, in order to establish liability under § 1983, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of

7

personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a § 1983 action. Rizzo v. Good, 423 U.S. 362 (1976).

In the complaint, the plaintiff does not make any specific allegations against defendant Weekly or defendant Miller[1] or assert that they were personally involved in any violation of his constitutional rights. However, in his supporting documents, the plaintiff clarifies that his claims against defendant Weekly and defendant Miller arise from their failure to act with respect to his administrative complaints and under their supervisory authority as the Health Services Administrator and Executive Director of the Regional Jail system, respectively. Indeed, the plaintiff concedes that defendant Weekly did not have the authority, legal or otherwise, to change his treatment plan or prescribed him the narcotic or narcotic-like medications he sought. Additionally, he concedes that defendant Miller has no authority in making medical decisions for inmates. Thus, the plaintiff merely names defendant Weekly and defendant Miller in their official or supervisory capacities.

Official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. Id. at 166. In order for the governmental entity to be a proper party

---

[1] Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, "[a] pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim *showing that the pleader is entitled to relief*, and (3) a demand for judgment for the relief the pleader seeks." (Emphasis added). "And, although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant." Migdal v. Rowe Price-Fleming International, Inc., 248 F.3d 321, 326 (4th Cir. 2001) (citation and internal quotations omitted).

8

of interest, the entity's policy or custom must have played a part in the violation. Id. (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)). In this case, the plaintiff fails to assert that a policy or custom of the entity played a part in the alleged violation of his constitutional rights.

As to supervisory capacity, as previously noted, there is no *respondeat superior* liability under § 1983. See Monell v. Department of Social Services, *supra*; Vinnedge v. Gibbs, 550 F. 2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge, supra. When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994); see also Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990).[2]

---

[2] In Miltier v. Beorn, the Fourth Circuit recognized that supervisory defendants may be personally liable under § 1983 if the plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." 896 F.2d at 854. In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon

In this instance, the plaintiff fails to make any allegations which reveal the presence of the required elements for supervisory liability .[3] Consequently, he fails to state a claim against defendant Weekly or Miller and he cannot maintain an action against them.

## C. Dr. Hahn

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

---

notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." Id. However, the plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs. *Id.* Rather, the plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. Id. In reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed. Id.

[3] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Shaw, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." *Id.* at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d at 851. A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

In addition, the test for deliberate indifference "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course

of treatment . . . [as it] remains a question of sound professional judgment. Bowring v. Godwill, 551 F.2d 44, 48 (4th Cir. 1977).

For the following reasons, the plaintiff fails to show that defendant Hahn was deliberately indifferent to his serious medical needs.

According to the plaintiff, he was incarcerated within the Regional Jail system on September 27, 2007. Dckt. 40 at 2. Upon his arrival, he advised medical staff of his history of chronic pain and his prior treatment for that condition. Id. At that time, the medical staff allegedly refused to continue the course of treatment previously prescribed by the plaintiff's primary care physician.[4] Id. Instead, medical staff ordered that the plaintiff be placed on Ultram. Id. The plaintiff agreed to try the new program, and although the Ultram helped manage his pain, the plaintiff found the treatment plan inadequate. Id.

The plaintiff was then transferred to the Tygart Valley Regional Jail. Id. Shortly after his arrival, the plaintiff was seen by Dr. Hahn for a medical evaluation. Id.; see also Affidavit of Dr. Hahn ("Hahn Affidavit") at ¶ 7. At that time, Dr. Hahn decided to discontinue the plaintiff's use of Ultram. Hahn Affidavit at ¶ 7-8. Instead, the plaintiff's treatment plan entailed one 81mg aspirin a day, Motrin 600 mg twice per day and Neurontin 900 mg twice per day.[5] Id. at ¶ 7. Dr. Hahn's decision to discontinue the use of Ultram and try an alternative treatment was based on his understanding that Ultram was not recommended for inmates because it is subject to abuse and

---

[4] The plaintiff has not indicated in which Regional Jail Facility this initial medical screening occurred. Moreover, the plaintiff makes no allegation of a violation of his constitutional rights as to the actions of medical staff during this time period.

[5] According to Dr. Hahn, Motrin is a non-steroidal anti-inflammatory medication given for chronic pain and Neurontin is an anti-epileptic medication useful in the treatment of neuropathic pain. Hahn Affidavit at ¶ 7.

12

addiction and was being considered for reclassification as a controlled substance. Id. at ¶ 9. In addition, Dr. Hahn had been informed by accreditation inspectors from the National Commission on Correctional Health Care to not to use Ultram because of its addictive nature. Id. at ¶ 10. Moreover, Dr. Hahn asserts that Ultram should not be given to patients that have Hepatitis C because the effects of Hepatitis C on the liver decreases the body's ability to metabolize Ultram.[6] Id. at ¶ 11.

On August 5, 2009, the plaintiff was transferred to the Southern Regional Jail. Dckt. 40 at 2; Hahn Affidavit at ¶ 12. While at the Southern Regional Jail, the plaintiff was placed back on Ultram for his chronic back pain. Id. When he later returned to the Tygart Valley Regional Jail, pursuant to policy, he was automatically continued on the Ultram for 30 days. Dckt. 40 at 2-3; Hahn Affidavit at ¶¶ 12-13. However, when the plaintiff was re-evaluated on September 14, 2009 by Ms. Grove, he was returned to his prior treatment plan and the use of Ultram was again discontinued. Hahn Affidavit at 14.

The plaintiff was seen by Dr. Hahn on September 22, 2009. Id. at ¶ 15. At that time, the plaintiff requested he be given Ultram and/or other narcotic or narcotic-like medications. Id. ¶¶ 15-16. Dr. Hahn explained to the plaintiff why Ultram and other narcotic and narcotic-like medications were not appropriate forms of treatment for his chronic back pain. Id. Moreover, at that appointment, Dr. Hahn observed the plaintiff walk and maneuver without difficulty, noted no areas of localized tenderness, no indication of radiation of pain to his extremities, no atrophy of his extremities, that his patellar reflexes were normal and no evidence whatsoever of pain during the examination. Id. at ¶ 15. Nonetheless, Dr. Hahn adjusted the plaintiff's treatment plan to also

---

[6] The plaintiff is also being treated for Hepatitis C. Hahn Affidavit at ¶ 11.

include Robaxin, a muscle relaxer, 750 mg twice a day. Id. at ¶ 17.

It is quite clear from the plaintiff's medical records that his medical conditions have been appropriately attended to by staff. For each of his complaints, the plaintiff has been seen by medical staff. He has been prescribed a course of treatment and given medications to address his pain. In fact, the plaintiff's prescriptions have been modified to address his chronic complaints. Given these circumstances, there is no question that the plaintiff has been receiving adequate medical care.

The plaintiff's chief complaint then, is that he is unhappy with the course of treatment that has been prescribed. However, as previously noted, disagreement with the prescribed course of treatment is not sufficient grounds to state a claim of deliberate indifference. The fact that Dr. Hahn's course of treatment is different from another physician's course of treatment is inapposite. Dr. Hahn, in his own medical opinion, does not believe that Ultram or other narcotic or narcotic-like substances are appropriate to treat the plaintiff's complaints of chronic back pain. The plaintiff has failed to show that such a decision rises to the level of a constitutional violation. There is simply no evidence to show that Dr. Hahn's decision is anything other than a reasoned medical opinion. At best, a simple difference in medical opinions between medical personnel may be sufficient to support a claim of medical malpractice or medical negligence, but not a violation of the Eighth Amendment. Thus, there is simply no evidence that Dr. Hahn, or any other person, deprived the plaintiff of adequate medical care or that they did so with a "sufficiently culpable state of mind." Therefore, the plaintiff has failed to establish that Dr. Hahn, or anyone else, was deliberately indifferent to his serious medical needs.

## V. Recommendation

For the reasons set forth in this opinion, the undersigned recommends that the following

motions be **GRANTED** and the plaintiff's complaint (dckt. 1) be **DENIED** and **DISMISSED with prejudice** from the active docket of this Court:

(1) defendant Weekly's Motion to Dismiss and for Summary Judgment (dckt. 22);

(2) defendant Miller's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (dckt. 30); and

(3) defendant Dr. Hahn's Motion to Dismiss and for Summary Judgment (dckt. 37).

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: December 14, 2009.

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE